```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                        SOUTHERN DIVISION


- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA       :
                              :
     v.                        :      Criminal No. 21-po-01101-CBA
                              :
JAMAR S. JOHNSON,              :
                              :
        Defendant.             :
                              :
- - - - - - - - - - - - - - - x      March 23, 2022


                                     Greenbelt, Maryland
```

**VIRTUAL SENTENCING HEARING**


        BEFORE:   MAGISTRATE JUDGE C. BRUCE ANDERSON


```
APPEARANCES:              ELLEN E. NAZMY, ESQ.
                          Office of the U.S. Attorney
                          6406 Ivy Lane, Suite 800
                          Greenbelt, Maryland  20770
                             On Behalf of the Government

                          DENISE J. BANJAVIC, ESQ.
                          Law Office of Denise J. Banjavic
                          142 Kendrick Place
                          Gaithersburg, Maryland 20878
                             On Behalf of the Defendant

Audio Operator:           R. Alexander

Transcription Company:    CompuScribe
                          P.O. Box 789
                          Cheltenham, Maryland 20623-9998
                          (301) 577-5882
```


Proceeding recorded by electronic sound recording, transcript produced by transcription service

I N D E X

Page

Preliminary Matters                                          4

Comments by Ellen E. Nazmy, Esq.
    Attorney for the State                                   6

Comments by Denise J. Banjavic, Esq.
    Attorney for the Defendant                               9

Comments by Magistrate Judge C. Bruce Anderson            13

Sentence by Magistrate Judge C. Bruce Anderson            15

Keynote: "---" indicates indiscernible in the transcript.

        "*" indicates phonetically spelled in the transcript.

*CompuScribe*
*301/577-5882*

1              P R O C E E D I N G S

2        (Whereupon, at 10:43 a.m., the hearing began.)

3              MS. NAZMY:  The next case, Your Honor, is United

4    States v. Jamar Johnson, 21po1101.  And we are here for

5    sentencing.

6              THE COURT:  All right.

7              Do I have a disposition sheet on that,

8    Mr. Alexander?  Oh, I got it.  Never mind.  I have it.

9              THE CLERK:  How are you doing, sir?

10             THE COURT:  I am good.

11             This must have been Judge DiGirolamo's case?

12             MS. BANJAVIC:  That is correct, Judge.  This is ---

13   on behalf of Mr. Johnson.

14             THE COURT:  All right.

15             MS. BANJAVIC:  Yes.

16             THE COURT:  Was there a presentence investigation?

17             MS. BANJAVIC:  There was.  The report -- I have a

18   copy.  Mr. Johnson got to see the copy and I believe he ---.

19             THE COURT:  I haven't seen it.  Was it sent to me?

20             MS. NAZMY:  Your Honor?  Your Honor, I can forward

21   you a copy right now if you would like.

22             THE COURT:  That would be great.  Can you forward it

23   to Mr. Alexander, also?

24             MS. NAZMY:  Yes, Your Honor.

25             THE COURT:  Okay.

nm                                                                    3

1            MS. NAZMY:  To what email address should I send it

2   to you?

3            THE COURT:  Actually, send it to Reggie and he will

4   print it out and I will read it.

5        (Pause.)

6            MS. BANJAVIC:  While we are waiting, Mr. Alexander,

7   I think I emailed you also two exhibits for the judge.  Did

8   you happen to get those and sent them up?

9            THE COURT:  Let me see if I got them.

10           MS. BANJAVIC:  One of them is just a letter from the

11  counseling company that he has been with for ten months.  I

12  think Ms. Nazmy has a copy of that, Pathways.  And then the

13  other is a piece of paper just confirming a hospital --

14  injuries that he had suffered and treatment at the hospital

15  for a broken ankle.

16           THE CLERK:  I'll print those out as well, Your

17  Honor.

18           THE COURT:  All right.  Okay.

19       (Pause.)

20           THE CLERK:  Thank you, Ms. Nazmy.  I have it.

21           MS. NAZMY:  You are welcome.

22           THE COURT:  Okay, I do -- I have the two exhibits,

23  but I don't need them printed out.

24       (Pause.)

25           MS. BANJAVIC:  Would the ---.

1        THE COURT:  All right, so what the emergency record

2   is from -- there must have been an accident with regard to

3   this case and he was sent to the hospital?

4        MS. BANJAVIC:  It was a single-car accident --- and,

5   yes, he was transferred to the hospital.  And I just wanted to

6   confirm his -- he suffered that injury and has continually --

7   follow up surgery that he will have to undergo as well as --

8   he is still in physical therapy.  Yes.

9        MS. NAZMY:  Excuse me, are you representing that on

10  the date of the incident there was a single-car accident?

11        MS. BANJAVIC:  Well, his -- he -- his car -- lost

12  control of his car, went off the road and he was injured.

13  Yes.

14        MS. NAZMY:  Well, --

15        MS. BANJAVIC:  I don't have it --

16        MS. NAZMY:  -- a seven-car accident on the date of

17  the incident.  And that is --- discovery.

18        MS. BANJAVIC:  Okay.  I was just --

19        THE COURT:  Was that part of the statement of facts?

20  Was there a trial in this matter or was it a plea?

21        MS. BANJAVIC:  It was a plea, Judge.  I guess what I

22  am saying is I don't have any information about other --

23  damage to other vehicles.  Is that information that was

24  provided?  I don't have that.

25        MS. NAZMY:  The information that it was a multiple-

5

1  vehicle crash caused by Mr. Johnson is in the discovery and in

2  the presentence report.

3           THE COURT:  Okay.  I tell you what, I haven't seen

4  this report yet.  It doesn't strike -- I don't know why I

5  didn't see it or if I missed an email or something.  Is it

6  easier for me to just take ten minutes right now and read

7  through it and then get back on?  Or do you want to move to

8  something else and I will take a break and read it?  What is

9  easier for you all?

10          MS. NAZMY:  Your Honor, I believe a ten-minute break

11 would be great everyone at this point.

12          THE COURT:  All right.  That is good.  I am going to

13 -- I think I know what to do.  I am going to stop my video.

14          Is that all I have got to do, Mr. Alexander?

15          THE CLERK:  Yes, Your Honor.  And put yourself on --

16          THE COURT:  All right.  I will stop my video and

17 mute.

18          THE CLERK:  Yes, Your Honor.

19          THE COURT:  And then I will need a minute and I am

20 going to go ahead read through this and then I will come back

21 on.  All right?

22          THE CLERK:  Okay.

23          This Honorable Court now stands in recess.

24     (Whereupon, at 10:49 a.m., a brief recess was taken and

25 at 11:03 a.m., the proceeding resumed.)

nm                                                                 6

1              THE COURT:  All right, I have had the opportunity to

2    read both the -- well, first of all, I have had an opportunity

3    to read the presentence investigation.  I won't comment on it

4    at this point, but I have read it.  And I have also read the

5    emergency room report from the night of the accident.  And I

6    have also read the letter of participation from Pathways

7    presented by Defense.

8              We are here for sentencing on the two-count of

9    driving under the influence and driving on a suspended

10   license.

11             And Ms. Nazmy, I will hear from you first.

12             MS. NAZMY:  Thank you, Your Honor.

13             The Defendant in this case was charged with very

14   serious misdemeanor offenses.  He had no business driving at

15   all.  His license was suspended.  And he was driving, not just

16   intoxicated, but high on PCP.  He was passed out in his car

17   and when he woke he started driving extremely fast, flashing

18   his lights, and running cars off the road.  He plowed into

19   cars stopped at a traffic light causing a seven-car pileup.

20             He refused to admit -- to submit to chemical testing

21   and the officers had to obtain a warrant to obtain his blood.

22             In 2018, this Defendant was arrested for driving

23   under the influence, negligent driving and other charges.  And

24   those charges were *nol prossed*, but this license was suspended

25   for refusing a chemical test, just like he did here.

1           The Defendant learned that when he refuses a

2   chemical test, he gets off on DUI charges.  And that should

3   end -- that should stop here.  The Defendant has numerous

4   prior instances of driving while suspended or without a

5   license, which he did in this case.

6           He could have killed somebody, Your Honor.  And the

7   fact --

8           THE COURT:  And I am just interjecting here, was

9   anybody else hurt other than him?

10          MS. NAZMY:  There is one individual that I had

11  spoken with that was involved in the car pileup.

12          The fact that this occurred during the pandemic and

13  the delays that happened, inherent in the docket since then,

14  has made it difficult to get in touch with victims, to be

15  candid, Your Honor.

16          However, the one that I spoke with was very

17  traumatized.  She did submit a written statement, which was

18  provided in discovery to the Defendant.  And she did -- her

19  car was -- Court's indulgence, Your Honor, so that I may

20  represent this accurately to you.  She did not wish to speak

21  today.  She wanted to move on with her life.

22          MS. BANJAVIC:  Your Honor, that witness that

23  Ms. Nazmy references was not involved in the actual accident.

24          MS. NAZMY:  That is not correct.

25          MS. BANJAVIC:  She was -- it is my understanding her

1   car was not damaged, that she suffered no physical injury, and

2   that her car was not damaged.  She witnessed Mr. Johnson

3   passing.  Well, she passed him and alleged that he was asleep.

4   Then she witnessed him pass her and then she states she

5   believes that he was traveling 100 miles an hour and driving

6   recklessly.  And then she states in the -- so her injury, if

7   the Court wants to call it that, was, I believe, emotional as

8   a witness.  Not as someone who was actually struck by

9   Mr. Johnson or physically injured.

10         MS. NAZMY:  That is not correct, Your Honor.  That

11  victim -- her name is Keisha* Rogers.  That victim was struck

12  by the Defendant.  She did not have her car repaired because

13  she couldn't afford the deductible on the vehicle.  And the

14  Defendant was driving a rental car so there was no insurance

15  settlement.  She has not requested restitution because she no

16  longer has that vehicle because this occurred some time ago.

17         And so the representation that that victim was not,

18  in fact, a victim is incorrect.

19         THE COURT:  All right.  Go ahead.  Again, is it

20  Ms. Banjavic?

21         MS. BANJAVIC:  Banjavic.

22         Judge, now that --

23         THE COURT:  All right.  I am going to give you a

24  chance -- hold on.  I will give you a chance to speak in a

25  minute.

nm                                                                    9

1          Ms. Nazmy, all right, anything further?  I mean,

2  continue.  I am sorry.  Not anything further.  I am not trying

3  to cut you off.

4          MS. NAZMY:  Thank you, Your Honor.

5          The Government believes that the only way to keep

6  the public safe from this Defendant and to teach him not to do

7  this is to impose jail.  We ask for a sentence of 60 days on

8  the driving under the influence of PCP charge and 18 months'

9  probation on operating on a suspended license.  We would

10  recommend testing and treatment, notwithstanding the treatment

11  that he has endeavored.  We would ask for fines and costs of

12  $500 and any other conditions that Your Honor deems

13  appropriate.

14          And one more word, Your Honor, I would just say that

15  the emergency room report that was submitted this morning,

16  supports the fact that this was a serious accident, which

17  resulted in physical injury and somebody could have been

18  killed.

19          Thank you.

20          MS. BANJAVIC:  Your Honor, first of all, I was not

21  aware that Ms. Nazmy is going to make a recommendation of

22  jail.  It was not my understanding at the time of our plea

23  agreement and discussions.

24          But secondly, I am reading the actual witness

25  statement of this woman who is, apparently, the only witness

1   that Ms. Nazmy was able to reach, despite all the other

2   vehicles.  And I do not see -- I am reading this statement and

3   I am not seeing in here that he -- that she acknowledges that

4   her vehicle was involved.  So I am not sure what information

5   Ms. Nazmy may have gotten at a later point in time, but in her

6   statement here, that is part of the discovery, she is talking

7   entirely about her observation and how she felt traumatized by

8   her observation of Mr. Johnson.

9         As I said, I was also not aware that Ms. Nazmy had a

10  recommendation.  That is counter the recommendation of the

11  probation agent in the report as well.

12        THE COURT:  Well, I get that.  But just because

13  probation says one thing, doesn't mean that the prosecutor has

14  got to go along with it.

15        MS. BANJAVIC:  Oh, I understand that, but during our

16  negotiation --

17        MS. NAZMY:  And, Your Honor, the Government's

18  offer --

19        MS. BANJAVIC:  -- --- --

20        THE COURT:  Hold on.

21        MS. NAZMY:  The Government's offer in this case was

22  to request a presentence report and reserve the right to

23  allocute at sentencing.  No promises were made not to request

24  jail.

25        THE COURT:  All right.

1              Anything further from you, Ms. Nazmy?

2              MS. NAZMY:  Your Honor, if you would like, I can

3    provide to you the full witness statement.

4              THE COURT:  I don't need that.  I mean, I get the

5    fact that there is one out there.  I will take that into

6    consideration.  What it says, I am not that concerned about,

7    other than the fact that I think we can both agree -- we can

8    all agree that whoever she is, she was traumatized by the

9    incident, whether she was involved in it or not.

10             Anything further?

11             MS. NAZMY:  No, Your Honor.  Thank you.

12             THE COURT:  All right.

13             Ms. Banjavic, do you want to tell me anything about

14   your client?

15             MS. BANJAVIC:  Well, yes.  As I said, I was not

16   aware that there was going to be a recommendation by Ms. Nazmy

17   for jail.  I would urge the Court to consider the

18   recommendation of probation.  Although Mr. Jamar Johnson has a

19   lot of traffic related offenses, driving while suspended and

20   whatnot, there is one criminal -- prior criminal conviction

21   for an assault, involved, I believe, spitting at a police

22   officer, but not anything more -- of a more physically

23   aggressive nature.

24             Mr. Johnson has been in the Pathways Program for ten

25   months.  He participated in a more intensive program early on,

1   but now he attends counseling once a week as a type of

2   maintenance on a monthly basis.

3           He works and supports -- Mr. Johnson, I believe you

4   have seven children.  Is that what you said?

5           THE DEFENDANT:  Yes.  I have seven kids.

6           THE COURT:  Okay.  He supports them with his fiancé.

7   And while he, obviously, has had substance abuse problems for

8   a number of years, but he -- as I said, he has been in this

9   program and it has been, apparently, helping quite a bit.  He

10  hasn't had any problems since he has been in this program.

11          I would urge the Court to follow the recommendation

12  of the probation report and sentence him to a period of

13  probation with continued counseling and treatment.

14          Mr. Johnson, where do you work?

15          THE DEFENDANT:  I work in Annapolis doing

16  maintenance.

17          MS. BANJAVIC:  Okay.  And how long have you been at

18  that job?

19          THE DEFENDANT:  Two and a half years.

20          MS. BANJAVIC:  Okay.  And the Pathways Program, it

21  is true, you are attending it on a weekly basis, is that

22  correct?

23          THE DEFENDANT:  Yes.

24          MS. BANJAVIC:  And previously, tell the Court when

25  you first began the program, how intensive was it?

1          THE DEFENDANT:  It was -- well; I was going like

2    twice a week at first.  And it's -- it went down to once a

3    week.  As you're doing better, you go down, so --

4          MS. BANJAVIC:  Okay.

5          THE DEFENDANT:  -- to once a month, but --

6          MS. BANJAVIC:  Okay.  But you have a minimum of four

7    times a month that you have to attend, is that correct?

8          THE DEFENDANT:  Right.  Right.

9          MS. BANJAVIC:  All right.  If you miss a week you

10   have to double up the next week, is what you said.  Is that

11   correct?

12         THE DEFENDANT:  Yes.

13         MS. BANJAVIC:  All right.  And your financial

14   support is referring to the children as well as your

15   household, is that correct?

16         THE DEFENDANT:  Yes.

17         MS. BANJAVIC:  All right.

18         Judge, we don't have anything further at this time.

19         THE COURT:  All right.  You know, this is probably

20   one of the most -- this is -- this ranks as one of the most

21   troubling cases I have ever heard.  I have been on the bench

22   now ten years since yesterday and I have not had a case that

23   has troubled me more than this.

24         Now, I didn't hear the case, but I have read the

25   presentence investigation and I am really bothered by this, I

1  got to tell you, from the get go.  This is a seven-car

2  accident at the -- 2:20 in the afternoon.  This isn't even in

3  the middle of the night.  This is at 2:20 in the afternoon.

4  Whether he was going 100 or not, I don't know, but he was

5  certainly going fast enough to scare the daylights out of

6  somebody, struck these cars.  One was -- I assumed it was his

7  that was overturned.  He ends up in the hospital with a broken

8  ankle.

9           MS. BANJAVIC:  Your Honor, for clarification his car

10 -- there is a photograph.  You will see a silver car with

11 damage to the front and the back.

12          THE COURT:  All right.

13          MS. BANJAVIC:  And that is his vehicle.

14          THE COURT:  All right.

15          From what -- and so -- I mean, to say this is a

16 normal DUI would be an understatement of the century.  You

17 know, this isn't a guy that happened from a bar or something

18 and was headed home.  This was in the middle of the day.  And

19 then look at his record and it is probably one of the worst

20 records I have ever seen.

21          Now I have taken into consideration the *nol prosses*,

22 and the ---, and all that stuff, but this is one horrible

23 record based on -- and a lot of driving on suspendeds.  I

24 mean, basically, he doesn't care whether he has a license or

25 not and he goes out and drives.  This is -- and on a regular

1  basis, consistently through his adult career, he is driving

2  without a license.  He doesn't care.  I mean, he doesn't care.

3  His motor vehicle records suggest that.  He has got a pending

4  case on some pending charges.

5        I know -- I understand he has got a family and he

6  works.  He had a situation where his probation was -- ended

7  unsatisfactorily.  I mean, I hate to tell you, but your client

8  doesn't get it.  And I don't think probation is going to help

9  him.  I just don't.

10        MS. BANJAVIC:  Your Honor, this is really the first

11  time that he has had the opportunity to participate in any

12  kind of therapy.  Obviously, ---.

13        THE COURT:  Well, you know what?  He has got a lot

14  of opportunities.  He has been placed on probation before and

15  he has got a problem.  And I have got a problem -- I have got

16  to worry about people driving the road lawfully during the

17  middle of the day that they don't have to get hurt and that

18  they can be safe.  I mean, I have an obligation to the

19  community.

20        I tell you, this is what I am going to do.  I don't

21  like it.  I am not happy and it troubles me to even do this.

22  Probation isn't going to help this individual.  It is not

23  going to work.  It is a waste of time.  What I am going to do

24  is I am going to sentence him on the count of driving under

25  the influence, I am going to sentence him to a sentence of six

1  months in jail.  I am going -- the driving suspended, I am

2  going to sentence him to a sentence of six months in jail to

3  run concurrently.  On each case there will be a $30 processing

4  fee and a $10 special assessment.  Total is $80 and I am going

5  to move the fine.  And he is not on probation.  When he gets

6  out of jail, he is out of jail.

7          MS. BANJAVIC:  Judge, is there --

8          THE COURT:  Go ahead.

9          MS. BANJAVIC:  Oh, is -- would you consider a work

10  release program for --

11          THE COURT:  No, I will not.  No.  He can stay in

12  jail for six months and think about what he did.  Not imposing

13  work release.

14          He has 14 days to note an appeal.  That must be in

15  writing with the Clerk of the Court.  He will self-report to

16  the Marshals Service -- what is today's date?  The 23rd.

17          THE CLERK:  ---, Your Honor?

18          THE COURT:  Hold on.  Calendar out.  He will report

19  to the Marshals Service at 9 o'clock on March -- I am sorry --

20  on April the 20th.  That is a Thursday -- or that is a

21  Wednesday.  So that gives him about three weeks, four weeks.

22          I am back.  Okay, I was just looking at my calendar.

23  I am sorry.  Again, if he has any questions -- so he will

24  report to the Marshals Service, serve his sentence, be

25  released, pay his costs, no probation.  I am not wasting

1  Probation's on this.  And I hope sitting in jail and some

2  incarceration will get his attention to not do this again.

3           If anybody -- I am sorry, he has 14 days to note an

4  appeal.  It has to be in writing with the Clerk of the Court.

5           Is there anything I have forgotten, Ms. Nazmy?

6           MS. NAZMY:  No, Your Honor.

7           THE COURT:  All right.

8           Anything else from anybody?

9           MS. BANJAVIC:  Your Honor, Mr. Johnson asks to say

10 something.  I don't think you really asked.

11          THE COURT:  Go ahead.

12          THE DEFENDANT:  Your Honor, I mean, to be honest,

13 like this drug program really woke me up.  I haven't been

14 using PCP, no nothing.  I mean, my mind is focused.  You know

15 what I'm saying?  And I just -- if anything, can you just give

16 me like house arrest or anything?  I mean, I support my whole

17 family.  I'm the only one that work.  My fiancé don't work.

18 My -- I got kids from two to six, eight.  You know what I'm

19 saying?  Nobody here to help me.  I mean, help -- I'm trying

20 to take care of my kids.  My family ain't did -- my family got

21 ---.  I'm the only supporting me and my fiancé and these kids.

22          THE COURT:  Mr. --

23          THE DEFENDANT:  You know what I'm saying?  I need my

24 job.  I don't have no --

25          THE COURT:  Mr. Johnson, I have taken into

nm                                                                       18

1    consideration not only your status financially, but your

2    environment and where you live and who you live with in making

3    this sentence.  And that is my decision.

4              Again, if you have -- if you decide you want to

5    appeal it, you have 14 days.  I suggest you talk to your

6    attorney.  She can help you with the filing of an appeal if

7    that is what you want to do.  Otherwise, that is my sentence.

8              If there is not anything else from anybody, you are

9    all free to leave the Zoom meeting.

10             MS. BANJAVIC:  All right, thank you, Judge.

11          (Whereupon, 11:22 a.m., the proceeding concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

nm                                                                        19

## C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the duplicated electronic sound recording of the

proceedings in the above-entitled matter.


*Noemy Martinez*    06-21-22
_____
Noemy Martinez              Date
Transcriber